## PULLMAN PALACE CAR COMPANY *v.* MARSH.

[No. 2,817.    Filed May 12, 1899.    Rehearing denied Feb. 17, 1900.]

APPEAL AND ERROR.—*Harmless Error.*—Where the facts averred in a paragraph of answer were admissible under the general denial, error in sustaining a demurrer thereto was harmless. *pp. 133, 134.*

CARRIERS.—*Sleeping-car Companies.—Damages.*—Defendant agreed to furnish sleeping-car accommodations to members of a press association at half rates, the members to pay full fare going, and to receive passes for the return trip, upon presentation of receipts showing payment of one full fare. Plaintiff presented a receipt showing fares paid for himself and wife, and defendant issued plaintiff a pass for the return trip, entitling them to section three in one of defendant's sleeping-cars, the upper berth of which was afterward, at the request of plaintiff, exchanged for the lower berth of section one, the agent writing "1 & 3" on the back of the pass. Plaintiff's wife and son occupied the lower berth of section three, and the sleeping-car conductor refused to permit plaintiff to occupy a berth in either section without additional payment, for the reason that only two names were on the pass. *Held*, that there was no violation of duty which rendered the sleeping-car company liable to plaintiff for damages. *pp. 130-137.*

From the Bartholomew Circuit Court.    *Reversed.*

*S. Stansifer* and *C. S. Baker*, for appellant.
*C. J. Kollmeyer*, for appellee.

BLACK, C. J.—The appellee's complaint against the appellant contained two paragraphs, in the first of which it was alleged, in substance, that the appellee had purchased of the Louisville and Nashville Railway Company transportation for himself, his wife, and his son from Louisville, Kentucky, to Nashville, Tennessee, for a certain excursion, represented by a pass for himself and wife and a separate pass for his son; that on the 2nd of July, 1897, he purchased from the appellant's sleeping-car ticket agent at Louisville section fifteen, consisting of an upper and a lower berth, in one of appellant's sleeping-cars attached to a passenger train about to depart from Louisville for Nashville on the Louisville and Nashville Railroad, and said agent issued to appellee a passenger's check for said section, appellee paying the agent at the time $4, which, by agreement theretofore made by J. W. Cockrum, secretary, on behalf of the Southern Indiana Press Association and the members thereof, the appellee, his wife, and son being such members, and on behalf of the appellant by E. A. Jewett, its assistant general superintendent, paid for said section on the journey to Nashville, and also for a section in the sleeping-car to be attached to the passenger train returning appellee, his wife, and son to Louisville. It was alleged that this agreement was in writing, but the appellee did not know that it was *verbatim*, it being in the possession of the appellant, and appellee not having access thereto; that the substance thereof was that the members of said press association could avail themselves of sleeping-car accommodations at one-half the usual rate, provided they paid both going and coming accommodations in advance at Louisville; that appellee had paid said agent, in accordance with said agreement, $4, as aforesaid, which entitled him, as aforesaid, to a full section

in appellant's sleeper both going and coming; that on the journey to Nashville appellee's wife and son occupied the lower berth of said section fifteen, and appellee the upper berth; that on the 3rd of July, 1897, appellant's sleeping-car ticket agent at Nashville issued to appellee a passenger's sleeping-car ticket for section three in a sleeping-car attached to a passenger train about to depart from Nashville, on which the appellee, his wife, and son held tickets for return transportation; that before entering the train, appellee, feeling indisposed and sick, requested, and said sleeping-car ticket agent agreed, to exchange the upper berth in section three for the lower berth in section one, and said agent noted the change on the back of appellee's said ticket; that the party entered the car, and the wife and son at once retired in the lower berth of section three, which they were permitted to occupy together during the return journey, without objection on the part of the appellant's agent in charge of the car; that, thereupon, appellee attempted to retire in the lower berth of section one, and exhibited to the conductor his sleeping-car ticket with said indorsement thereon, but the conductor refused appellee admission to the berth, claiming, in insulting language, and a loud tone of voice, within the hearing of the carload of passengers, that appellee was not entitled to said berth; that, thereafter, appellee demanded the upper berth of section three, but the conductor, in like manner, refused; that the conductor, by said manner and refusals, placed appellee before the passengers in the light of a person seeking to defraud the appellant, and publicly shamed and humiliated the appellee; that the conductor knew appellee was entitled to one of said berths, and was sick; that appellee was compelled to stand on the platform of the sleeping-car, and to stand and sit in the common passenger coaches, which were crowded; that the wrongful refusal to permit appellee to occupy one of said berths caused him to suffer great physical and mental pain, and aggravated his sickness.  There were also averments relat-

ing to appellee's separation from his wife and son, and it was alleged that he lost the sum of $2 paid for said sleeping-car accommodations without receiving any value therefor; his entire damages being laid in the sum of $1,000. The second paragraph was like the first, except that it was alleged that the contract between the secretary of the press association and the assistant general superintendent of the appellant was an oral agreement.

The appellant answered in two paragraphs, the second being a general denial. In the first paragraph of answer, a demurrer to which was sustained, it was shown that the only contract made by said secretary on behalf of the press association or the members thereof with said assistant general superintendent on behalf of the appellant concerning said excursion, was evidenced by and contained in certain written correspondence, or letters, made exhibits of this paragraph; that, by the terms of said contract, it was stipulated, in substance and effect, that delegates should pay full fare to Nashville, where A. W. Reppy, the agent of the appellant, upon presentation of a receipt showing the fare paid to Nashville, and the usual credentials, would furnish passes for the return trip; that the only receipt presented by the appellee to the appellant's said agent at Nashville was one for fares paid from Louisville to Nashville, "J. N. Marsh and wife" being named therein as passengers, and as having occupied the lower and upper berths of section fifteen of appellant's car "Cuero"; that appellant's said agent thereupon issued to appellee and his wife, as "J. N. Marsh and wife," a pass entitling them, and them only, to one section in one of appellant's sleeping-cars returning from Nashville to Louisville; that, pursuant to the terms of said pass, appellant's agent thereon assigned to appellee and his wife section three in car "Leitrim", the upper berth of which section was afterward, at the request of the appellee, exchanged for the lower berth of section one of said car, as alleged in the complaint; that thereafter, upon boarding said car, ap-

pellee's wife and son, with the consent, and upon the instance of the appellee, occupied the lower berth of said section three; that "plaintiff thereby waived and released all right to occupy said lower berth in section one, and surrendered and assigned his right to occupy said section three to his said son; and thereupon, and for the reason aforesaid, and not otherwise, defendant refused to permit plaintiff to occupy either the upper berth in section three or the lower berth in said section one, except upon the payment of the usual fare for the trip from Nashville to Louisville." The first letter of the correspondence so mentioned was one from said Cockrum, secretary, to the appellant, at Chicago, referring to the proposed excursion, and asking what terms the appellant would make to the association for sleepers for the round trip. In the answer from said assistant general superintendent was an offer to furnish cars at a price stated per day; "or, if the delegates will go individually and will pay full fare to Nashville, our agent at that point, Mr. Reppy, will furnish passes for the return trip, upon presentation of receipts showing fare paid to Nashville, and the usual credentials." In said secretary's reply it was said: "I have concluded to accept your half-rate proposition. I presume your superintendent at Nashville will be advised to issue return tickets." The receipt of this was acknowledged by the assistant general superintendent, who stated that he would instruct the appellant's representatives at Louisville and Nashville, in relation to the excursion; that the delegates should present their receipts showing fare paid to Nashville and their credentials to Mr. A. W. Reppy, appellant's agent at that point, and he would issue passes for the return trip.

The complaint was for depriving the appellee, in an insulting manner, of sleeping-car accommodations to which he was entitled under a contract, the terms of which were not alleged, but the substance of which was stated. The first paragraph of answer did not purport to confess and

avoid, but showed the actual terms of the contract, with the conduct of the parties thereunder, differing, in effect, from the contract and conduct alleged in the complaint, and that the appellee was not entitled to the accommodations as claimed in the complaint. The facts averred in the answer were admissible, and they were, in fact, proved, under the general denial also pleaded. There was no available error in sustaining the demurrer. The cause was tried by jury, and a general verdict was returned for the appellee, awarding him $500. The appellant's motion for a new trial was overruled, and judgment was rendered on the verdict.

The evidence showed that the contract was in writing and as stated in the first paragraph of answer, and was available for the delegates of the press association going individually who paid full fare from Louisville to Nashville, and who procured from the agent at Nashville passes for the return trip upon presentation of receipts showing fare paid to Nashville and the usual credentials. By the rules and regulations of the appellant, no round trip tickets were sold, and when a passenger purchased a sleeping-car ticket, and was given a check for a full section, four persons were entitled to occupy the section, but when a pass was issued designating certain persons, only those whose names were on the face of the pass were entitled to occupy any part of a section, or to ride in the car without paying for it. The appellee was a member of the press association. His wife and son were not members. His son, who was fourteen years old, was present as the representative of a certain newspaper. The appellee paid the agent of the appellant $4, and received a ticket for section fifteen in the car going to Nashville, and the whole of that section was assigned to him by the conductor. A receipt was given him while going down, showing the full fare from Louisville to Nashville had been paid for "J. N. Marsh and wife," for the upper and lower berths in section fifteen. The conductor who gave it appears to have had no knowledge of the presence of an-

other person in the section. This receipt and appellee's credentials as a member of the press association having been presented to the appellant's agent at Nashville, the appellee received from this agent a pass purporting to entitle "J. N. Marsh and wife" to occupy one section from Nashville to Louisville. Upon his request for a lower berth instead of the upper one in section three, the agent at Nashville wrote "1 & 3" on the back of the pass. After his wife and son had retired in the lower berth of section three, and while appellee was sitting in the seat of section one, the sleeping-car conductor, to whom appellee showed this sleeping-car pass and also the pass for railroad transportation for himself and wife and the railroad transportation pass for the son, refused to permit appellee to occupy a berth in either section unless he would pay $2, for the reason that only two names were upon the sleeping-car pass. Appellee's wife said to her son that they would have to get out of the car, that they were about to put the appellee out; whereupon the appellee said, "No, you need not get out of the car, if I do have to get out." The conductor offered that if the appellee would pay $2, the conductor would give him a receipt for it with which he could apply to the company to repay it. The conductor explained to the appellee that the regular section ticket which the party had in going from Louisville to Nashville was a different kind of ticket, and on it they had a right to take in four persons to fill the section. Appellee understood that the price of a full section from Louisville to Nashville was $4, and that a passenger so purchasing the section had a right to have it occupied by four persons.

It appeared that appellee was not well acquainted with the terms of the contract made by the representative of the press association and the appellant, and had never read it, and appellee's attention was first particularly directed to it on the trip back from Nashville. He had paid very little attention to the papers, hardly looked at them. He appears to

have supposed that upon the pass for a section for himself and wife he would be entitled to sleeping accommodations for his son as well as for himself and wife. He had no sleeping-car pass for his son coming back, and paid no sleeping-car fare for him. The son occupied the berth with the wife with the consent of appellee, who claimed to the conductor that the son had a right to do so. In the procurement of the sleeping-car ticket which was purchased at Louisville, it was not necessary to present any credentials. It was purchased in the usual manner of buying sleeping-car tickets. The contract contemplated that, in going, the passengers should pay as if they were passengers going only one way, that is, without reference to any return, and that in returning they should be furnished with accommodations indicated by passes received at Nashville upon receipts and credentials exhibited to the agent who furnished the passes for returning. The agent at Nashville was not requested to issue any pass for the son, and did not issue one, and did not know there was such a person. The appellee, without giving attention to the contract, supposed that because in going down he had taken the son in the same section with himself and wife, he could do the same returning upon a pass for a section for himself and wife alone. He supposed he had a right which he did not have, and persisted in claiming it after the matter had been explained to him by the conductor, who could not depart from the instructions conveyed by the pass.

The evidence of the appellee did not support a claim that the appellee was put to shame before the passengers, or humiliated by insulting language. Without any fault on the part of the appellant, the appellee with his family went upon the sleeping-car with no evidence for the conductor that he was authorized to recognize that the son had a right to sleeping-car accommodation without payment therefor upon the train. Although the wife was not a delegate, and no credentials were presented except for the husband,

yet upon the receipt of the conductor showing payment of fare from Louisville to Nashville for the appellee and his wife, the agent at Nashville gave him a free pass back to Louisville for himself and wife. If he would have included the son in the pass, as well as the wife, upon request, there was no request to that effect. When the appellee went upon the train with such a pass and presented it to the conductor, there had been no violation of duty on the part of the appellant. It was no violation of duty to the appellee, who was in charge of his family and controlling their conduct, for the conductor to refuse to permit more than two of them to have sleeping accommodations on that pass.

It is true that the appellee, and not the son, was entitled to the sleeping accommodations under the pass, and the case seems to have proceeded in the court below upon a theory that the son was a trespasser whom the appellant permitted to occupy a berth, while it excluded the appellee from the accommodation to which, notwithstanding such permission, he was entitled. But the appellee was demanding that all of the three persons be accommodated upon the pass. The son was asleep in bed, and the appellee, whose minor son he was, cannot complain that the son was not compelled to leave the berth. Plainly, the appellee relinquished his right to the son, for whose accommodations in the sleeper it devolved upon him, under the circumstances, to pay. The son was not a trespasser as against the appellee, but was occupying the berth with his acquiescence. The appellee lost the sleeping accommodations which he expected to enjoy without any failure of the appellant to comply with its contract.

The verdict was not supported by sufficient evidence. The judgment is reversed, and the cause is remanded for a new trial.